The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good afternoon everyone and welcome to the court. The in-bank court has before it one argument, Ariad Pharmaceutical v. Eli Lilly. Thirty minutes aside, Mr. Lipsy, we'll hear first from you. I understand that you intend to reserve five minutes for rebuttal. You're aware of the yellow light signaling you're beginning to consume your reserve rebuttal time. Very well, please proceed. Please proceed. Thank you, Your Honor. From its inception, the United States patent law has always required of the inventor that he provide a written description of his invention for the self-evident purpose of determining what this inventor has invented. And that language is there to this day. Mr. Lipsy, should that be a question of law like enablement or a question of fact like it has traditionally been held to be? It has indeed been said to be a question of fact. The way it has come to be applied and the way it perhaps should be applied, it's much more like claim construction in that the question is resolved based on the four corners of the document in light of how those words would be interpreted by a person skilled in the art, which is a question of law when you do it for the claims. It logically could be that way. Also, it's very akin to the question of conception. That's really what it's all about. This written description is, as Professor Leveque said better than I did, a corroboration of this inventor's conception. Was that issue argued to the panel? The issue? I don't believe it was, Your Honor. Isn't it a little late for us to be taking it up here in front of the full court when it wasn't part of the appeal as originally presented to the court and originally before a panel? It was a matter raised by some of the amici. I was responding simply to the question, Your Honor. Let me ask you this. In your initial brief, you complained about an erroneous jury instruction on written description. But it wasn't clear to me, and I couldn't find it in the record, whether a timely objection was made and a correct instruction proffered as required by the rules of procedure. Can you help me out on that? Your Honor, my recollection is that objection was timely made, and not only was it timely made, there were both pre- and post-verdict motions for judgment as a matter of law on the very issue. Was a correct instruction proffered in a timely fashion to Judge Zobel? Yes, Your Honor. The dispute was that the proposed instruction said that the patent had to give a functional description of the invention, and Lilly, citing this Court's cases, said, no, that's not correct. It has to be a function tied to structure in order to be correct. And I'm told that the discussion is at pages A-172 and 173. Just one more minute on this. Was there a charge conference, and did you submit in writing a proper instruction? There was a charge conference, and that is what I have just cited. And I would have to check the record, Your Honor, but I believe that there were competing jury instructions submitted in writing. I would be happy to submit something in response. Thank you. If the written description requirement becomes a question of law, would it be a parallel type of analysis that we would have for a question of law? Is obviousness underlying facts determined by the fact finder, and the question of law determined by the judge? That is the way that the question of conception is dealt with now, and it would not be illogical to do it that way. The question of conception is ultimately a question of law based on underlying facts. So we could use the same test for written description if, in fact, a written description test is established? Indeed you could, or one could appropriately, by analogy to the Markman procedure, use a pure question of law. Mr. Lipsy, is there any empirical evidence that our having categorized it long ago as a question of fact has created measurable problems? Is there a harm here to be remedied? As a litigator, I would tell you simply that matters that can be addressed to the bench are handled more easily and more facilely than matters that must be presented to the jury. If it were a question of law or a mixed question of law, in fact, it would be easier to deal with. The number of cases that come to this court on summary judgment or judgment as a matter of law would suggest that perhaps it might be easier to handle it that way, but I would agree there has been no disaster in the Federal District Courts treating it as... There is no evidence that many outcomes have been changed because of the categorization of this issue as one of fact? Well, certainly the outcome in this case was perhaps changed. One, it is always a problem when the technology is as complex as this is to present the issue effectively. Well, if we continue to call it an issue of fact, do you then lose? No, I do not, because... Then why do you care? Because I was asked. Mr. Lipsy, since the original claims are published under 122B, how can original claims not satisfy public notice? They may satisfy public notice about the boundary of the invention. They do not satisfy public notice as to what the invention is, and Judge Rich... Don't the claims describe, don't the claims identify, particularly point out what the inventor considers the invention to be? This is the fundamental flaw in Herriot's analysis. The answer is they sometimes do, they often do, but they often do not. The claim defines the boundary... But isn't that a 1122 problem? No, the claim defines the boundary around the invention without describing the invention. Judge Rich in In Re Vamco has a footnote where he talks about this, that a claim language is like the meets and bounds of a deed, it describes the boundary of the land without describing the land. The function of describing the land, or the invention in this case, is the function of the written description requirement. Isn't it a question of support to show that you possess a sufficient portion of the genus to obtain a claim to that boundary? That is always the inquiry, when the boundary is to a genus, is has there been described a sufficient support for a generic invention in any one of a number of ways, one of which would be by a number of species, from which a reasoned scientific analysis can be made of the scope of the genus, one might be by an appropriate generic description as with a chemical formula, there are lots of ways to do it, but that is exactly the issue. Doesn't the statute specify the way to do it? In that the sufficiency is measured by whether it enables one of skill in the arts to make and use whatever it is that falls within the bounds of the claim. That is one thing that the statute requires. There is a second thing the statute requires, which is that the thing claimed be something that the applicant invented, as shown by an objective analysis of the four corners of his patent application, and that is indeed what the statute has always required. It was required in O'Reilly v. Morse, it was required in Schreiber-Schroth in 1938, it was required in Ingray-Moore in that 1946 case, and in 1967 in the Ruchig case. But in the light of what Mr. Whelan has conceded in his brief, what is the practical difference between what you're arguing and what he's arguing? I'm having a little difficulty understanding that. Certainly. The question of whether the applicant is claiming something which according to his patent description he invented is a fundamentally different question than the question of whether a different person, this hypothetical person of ordinary skill in the art, possessed of all the relevant prior art reading that application, might without undue experimentation be able to do so. Yeah, but he seems to concede. Don't you understand him to concede that there has to be some sort of written description as part of the enablement requirements? He does concede that, but then he turns around and, in my opinion, circularly says the sufficiency of it is to be measured by compliance with the enablement requirement, and that the case law is clear that if an inventor has not originated this subject matter, has not invented it as reflected in his corroborated conception, the patent document, he is not entitled to a patent on it. That's the way our system is set up. The patent goes to the originator, not to a third person who might view what he wrote and conclude, oh, I could do something else, and Shriver-Shroff makes that abundantly clear. There, the web in the piston, in the split piston, the court accepted that people of ordinary skill in the art would recognize that that ought to be flexible, that was the best way to do it, but they said that's not the invention you described and you're not entitled to claim it. Described or identified? I got it right here. Described or identified? He identified a rigid web, and therefore that was the invention that had to be enabled, but that's different than the difficulty provided in a written description requirement where you're essentially converting claim construction into a validity doctrine, isn't it? Are you troubled at all by that? The claim construction is our most difficult area. Given the philosophical imprecision of language, we find that varies even from panel to panel, and yet now you're making that a validity doctrine. Does that trouble you at all? No, I'm not making anything anything. The statute and the long history of decisions have made a validity question. What decision before Lilly ever used written description out of a priority context? If I may, Your Honor, if there is a written description requirement in section 112, first paragraph, it's got to apply to all claims and all applications and all arts, and we know from 35 U.S.C. of a priority context. Give me an example. It is true that it most usually comes up in a priority context. Is there any example before Lilly of it being applied out of a priority context? I believe that both In Re Sus and In Re More, the 1946 one, were not priority contexts. Doesn't section 282 make it a defense to invalidity for failure to comply with any requirement in section 112? Indeed it does, Your Honor. Indeed it does. But that's assuming that written description is included in 112 beyond the issue of disclosure on a priority basis rather than a validity basis. Indeed it does, and if I may answer Judge Rader's point, Schreiber-Schroth says that was not the invention which Gulick described by his references to an extremely rigid web, so it was a matter of description there. The cases are clear that, as I outlined from O'Reilly v. Morse on down to the present day, that there is a requirement, separate and apart from whether somebody else looking at it might have been able to do it, that will limit what a patent applicant can claim in his application, and that is he must have demonstrated within the four corners of that application, as it's read by a person skilled in the art, that that's something he invented, i.e. something he conceived. And because not all the ideas are legally sufficient conceptions, and indeed many of them are not, research plans, the germ of an idea thrown out in Genentech v. Novo Nordisk, not all ideas are conceptions, and it's up to the court to look at what's in that patent and determine whether this inventor actually invented what he is now claiming. And normally, I agree, in 99 out of 100 cases, enablement and written description standard fall together. They need not, as Shriver-Shroff indicates, and it is now and has always been a validity defense and a validity requirement. Now, going to the question of whether it applies outside of priority. Section 120 of the statute tells you when you're entitled to an earlier application filing date. And it doesn't say that the claim has to be presented in the original case. It doesn't have to say it's the first time. There's only one requirement. It says it has to comply with 35 U.S.C. 112 First Paragraph. And if it does, you're entitled to that date. And I believe it's conceded by Ariane that in that environment, this sort of written description analysis goes on all the time, and it can only go on under that statutory framework if it's a legal requirement of Section 112. And if you accept that, there's no principled reason why the requirements of 112 should not apply to all claims in all applications at all times in all arts. And indeed, we contend that's the law. Isn't it true that Section 112 does not have a limitation, that it's for priority purposes or interference? Indeed, it does not. It comes up all the time in lots of different contexts in establishing what's the prior art and what isn't. Why did Judge Rich create in re ruching the written description requirement? He did not. Why did he say in Rasmussen that he was just applying it as it had always been applied in the priority context? As I conceded, it normally comes up in a priority context. The issue, as it came up in ruching... It was created for that purpose. He moved it out of the 130 section because he was uncomfortable with what he perceived to be a narrow application of the no new matter doctrine. So if it was created with a narrow purpose, how did it suddenly get so broad? I beg to differ. It was not created in in re ruching. It had been in existence for a long time by the time of in re ruching and was not, in fact, an unusual rule. How had it been in existence a long time? What evidence do you have of that? O'Reilly v. Morse said you're trying to claim something you haven't described and haven't invented. You're out of here. Schreiber-Schwartz said you're trying to claim something that you haven't described. Those were not written description cases. Those were enablement cases. Well, the word they used, Your Honor, was described. Which was, of course, consistent with the statutory framework. Well, I mean, the problem is Schreiber-Schwartz. Because the description requirement is so as to enable. So you could use either term and be discussing the same thing. The Schreiber-Schwartz case described the thing changed as something that everybody would have known from reading that application. And the only reason not to let that patent applicant claim it is that it was not in conformity with what he described or described. The court in Schreiber-Schwartz said the patentee to describe his invention so that others may construct and use it. They used description in its proper enablement context. Identification and enablement. The claim scope identifying and then the enablement sufficiently describing. The step that gets left out there, Your Honor, is the fundamental requirement of a United States patent that the person who applied for it have invented what's now being claimed. And that is judged by reference to his own description of the invention, which is the corroborated evidence of what he conceived. And if he didn't invent it, he's not entitled to a patent, whether somebody else could have done it or not. And that's the structure of our system. And if it's to be changed, this statute and this interpretation has been in effect here, depending on who you talk to, for 30 years, 40 years, 60 years, or 100 years. It's been a long time. And the Patent Act has been amended many times in the interim. And indeed, it's under consideration again. And not once, to my knowledge, has it been suggested that this needs to be changed. And we would suggest that at this point in time, the prudent thing, rather than unsettle all these expectations, is if it is to be changed now, it is for Congress to judge. You've used up more than half of your rebuttal time. Do you want to retain the rest? Yes, sir. Thank you. Thank you. Counsel for the Governor, Mr. Freeman. Thank you, Mr. Chief Judge. And may it please the Court, Mark Freeman for the United States, as amicus curiae. Let me just begin by thanking the Court for the invitation to the United States to express its views in this matter and for the opportunity to address the Court this afternoon. Perhaps I could start on the merits of Judge Rader's questions. The government really does not think there's any way to reach Shriver-Shroff in Raymoor, which was 1946 before the 1952 Patent Act, promoted in other cases as merely reflecting an enablement doctrine. The question presented in Shriver-Shroff, and this is at 3.05 U.S. at 50, the question presented in Shriver-Shroff was whether the Court of Appeals correctly held that the defendant could be held liable for infringing a claimed combination where an element of the claimed combination was, quote, not described in the original specification but added later by amendment. That is the written description. Counsel, a lot of questions here today have focused on whether originally filed claims can fail the written description requirement. Do you know whether these claims in NFKappa B were originally filed? Your Honor, the government has not taken a position on the particular facts of this case. I'm not sure. I'm sure counsel for Eli Lilly will be able to address that. But I think the original claim dispute is an important one. Judge Lynn mentioned it earlier. And I really think that the dispute has gotten confused here. The argument over whether the description principles apply to original claims... Counsel, can you give me an example of any kind of case other than the genus species example, but any kind of case in a different technology area where an originally filed claim could fail the written description requirement? Sure. I mean, this is a case in which one of the key elements, one of the key limitations in the patent is described in purely functional terms. And this is the example given in the 2001 written description guidelines of the Patent Office in the 66th Fed Register of 1105. The example is if the specification in the original claim, an original claim context, teaches one how to make a compound and the claim claims it in terms of its function, then it may well be that that claim, in its original scope, does not... a person having skill in the art, reading that specification, would not be able to say, I recognize that this inventor conceived what is claimed, that is, any compound having that claimed function. Now, the written description guidelines make very clear, Your Honor, that this should be extremely rare, that original claims fail this requirement, and that there is a strong presumption that they comply with the requirement. But the fight over whether description principles applies to original claims is just a fight over whether we think it is always invariably true that original claims describe themselves, or whether there are some circumstances, admittedly rare, in which an original claim may not describe itself. Is there really a difference between what you're saying and what Mr. Whelan is saying? In your brief, you seem to doubt that there really is any difference. What are we arguing about? Your Honor, that's a great question for Mr. Whelan. I'll ask him. I tell you, I found the reply brief, in this case, baffling. At the outset, it says, we all agree on these things, but then it seems to say, in judging whether a patent does A and B, describe reinvention, and describe how to make and use it, we look only at whether you've done B. That's a pretty odd statutory construction, and one that we would hesitate to attribute to the statutory design. We also just don't think it's consistent with the text as it's written. The key to the statutory argument, we think here, is that the statute does not say, you must describe the invention, and how to make and use it, but only to the extent necessary to enable. It says you must describe the invention, you must describe how to make and use it, and that description must enable. Enablement is absolutely a necessary condition of the statute, but it's not a sufficient one in every case. Why does the Patent Office care? I mean, how many applications that can't be rejected on other statutory grounds will fail only if we adopt precisely what you and Mr. Lipsy propose? Your Honor, there's a number of answers to that question. Let me address them in turn first. As we lay out in our brief, the written description requirement is recognized by the Supreme Court as early as the Hobbs v. Emerson case. I'm not asking about history, I'm asking about impact. How many cases can you reject that you couldn't otherwise reject only if we adopt exactly what you're proposing? I don't know an absolute number, Your Honor, but I think that number must be high. We're talking 400,000 patent applications examined every year by the Patent Office, and it has become, as I think the Court has noted, increasingly popular to describe, particularly in biomedical and chemical fields of art, but also in other places, such as software inventions in the lizard tech case, claims and the inventions by their function or effect, or to describe a species and claim the entire genus. And the written description doctrine is one of the basic tools that the Patent Office has to constrain those claims and get the patentee to make clear to the public what the scope of that invention is. And this goes to Judge Rader's point earlier about... You know, I can't remember ever seeing a Patent Office rejection that was based only on a failure of written description. I'm not saying there aren't any, but the flow of cases that come through this Court at 300 or 400 a year, it's exceedingly rare that the Patent Office hangs its case on written description. I can't remember a single case. Your Honor, I don't have a single case in mind. So you say 400,000 applications a year, but if none of them depend on this, then it seems like the practical impact is minuscule, negligible. Your Honor, with all respect, one cannot assume away 400,000 applications where the written description doctrine comes into play in a great many of them. I mean, we have... In court, yes, but I'm asking about in the Patent Office. But a great number... The vast majority of the Patent Office's decisions are not appealed to this Court. This Court never sees them. The vast majority of patents aren't litigated. Let me help you. Please. I'm all ears. In what I call the old days, when I started in this practice, the hot area of scientific advance was chemistry. And the idea of how many specific examples you might need to support a genus was pretty much reviewed in the context of written description. How well had you illustrated the scope that you wanted to claim? Absolutely. Now, some very interesting things have happened in the evolution of science in the last half century or so. And what seems to me is that we've gone full cycle in certain areas of technology where, again, there are generic concepts. This case is a good example. And as to how one describes the genus in terms of entitlement to patent it, it has always seemed to me to depend on how much detail you go to. And this, to me, is the classical example, again in this case, of why description and enablement in some areas may not be coextensive. In others, the issue doesn't arise at all. Generally, when the issue arises, it's resolved in the office. So I agree completely that it's quite rare to see those cases on appeal. They're not insoluble. It's much easier to run a few experiments than to take an appeal and come back again a decade later. But the principle, I think, is very well and importantly illustrated in this particular case where it might very well be that the outcome depends on how we answer this question. Your Honor, we completely agree with the caveat that we've not taken a view on the particular facts of this case. But as to Your Honor's characterization of chemical inventions and genus species inventions or claims, we think that's exactly right. And this goes to Judge Moore's question earlier. Although the question to me was, can you think of an example outside of the genus species context? That's a pretty important context and one in which... Well, doesn't it frequently occur that perhaps more in chemical biotechnology inventions, but not necessarily, someone files a broad claim and exemplifies it with very little because that's all they've done. In other words, they haven't shown possession of the genus. Yes. They haven't supported the broad generic claim and the patent office rejects it. That's right. And that's exactly right. And this is where I was going with Judge Moore's question, which is the genus species claim, it's really a sort of archetype of problem. And it's not just species of chemical compounds. It's, take Tronso versus Biomet. That was where the claim was, the original disclosure was of a conical-shaped hip replacement. And the amended claim attempted to cover any shape whatsoever, even though the original disclosure had stressed the benefits of the conical shape. That's a genus species problem. But I just wanted to go to Judge Moore. But why isn't that effectively covered in the vast majority of cases by the doctrine of enabling across the full scope of the claim? Your Honor... Simply enabling a single embodiment. Yes, Your Honor. I think that's the court's decision in, I believe it was Lizard Tech, makes just this point. And we think that's right. Enablement is available to address a large number of these problems. The board's recent published decision in Ray Rodriguez demonstrates that, we think. But at the same time, it's not always true that something that is not described will not be enabled. Take the classic example this court gave in the footnote in Ray De Leoni, which we think just sort of exemplifies the problem, which is, I may describe and enable Compound A. But in the course of describing and enabling Compound A, I may also teach others skilled in the art how to do B, C, and D. Because they're related. Judge Moore? Because they're related. If you teach how to make disclosed A and B and C are related, one can readily, one of ordinary skilled in the art can readily enable B and C, but it's not disclosed. Exactly, Your Honor. And I'll just finish the answer to the question. The question in this case really is, if the inventor had never thought of B, C, and D, never knew about it, never conceived of it, if it turns out later that D is commercially valuable, can they go back and claim the priority date? And the answer to that question in the view of the Patent Office has to be no. Thank you. Thank you, Mr. Whalen. Welcome back to the Court. Thank you. First time some of us have seen you since you've changed hats. I don't see a hat. May it please the Court, anticipating Judge Dyke's question, I invite the Court's attention to page three of our reply brief, which of the briefs is the gray one, where we lay out a side-by-side comparison of these two competing statutory constructions. And since this case turns on statutory construction, that's how we're instructed to start from the Supreme Court. So, the artist on the left— Mr. Whalen, the first point of your first brief, which of course answers the question we asked, does not contain a written description separate from the enablement requirement. Then you say in your reply brief, description requirement polices priority. Have you retreated from this petition? No, sir. The petition in this case— But the statute doesn't limit itself to priority. Your Honor, if I could focus, in answering your question and looking at the statutory construction, what this Court has done is delinked the written description of the invention from the rest of the words of the statute. And what we are suggesting is that the description of the invention and of how to make and use it is measured by the subsequent— by the following terms. Therefore, it has to be clear, concise, and exact, and therefore it has to enable. If this were not the case, then Congress would have said the written description of the invention does not have to be in clear, concise, and exact terms, but the written description of the manner of making and use of it does. That makes no sense. If this were the case, then in 1793, the written description of the invention would have to stand on its own, as it does here, and it didn't because the written description of the invention and how to make and use it had to distinguish as well as enable. You may be giving Congress more credit for clever drafting than it deserves. Having worked there, Your Honor, I don't think— Our point here is that the description— Our point here is that the description of both the invention and how to make and use it is clear and concise and that it's enabled. And I'm not going to use labels because I think, as you've seen in some of the back-and-forth, people think it means very different things. So Judge Lord— Mr. Whalen. Judge Proust and then Judge Bayard. In your brief, in another portion of your reply brief, you say that the description requirement of 112 also ensures the claims, whether original or amended, match the inventor's contribution to the art. So you're agreeing that there's a requirement for written description. Is your point only that, with respect to enforcement, there's no way that one can enforce anything other than the enablement portion of the statute? Absolutely not. What I'm saying is the statute has a description requirement. You know, separate the labels. The description, you have to identify the invention and how to make and use that invention. So, when you have cases like Schreiber-Schrock, where they try to amend claims, the question is, did he identify it so somebody could make and use that very same invention? Answer, no. So the limits of identify are only to make and use? There's nothing beyond making and using to the word identify? I think if you ask— when I asked my wife this question, what she thought the statute meant, she said, tell me what it is, tell me how to make and use it. And that's what this requires. Why don't you leave out the first part of that? Excuse me? What would she say if you left out the first part? She would say, only a bunch of patent lawyers could try to convince people how to make and use something, but not tell them what they're making. But that's the whole point of this thing. There is no separate written description requirement. Would anyone ever start out a patent application by saying, I make and use my invention as follows? No. They start out by saying, this is my invention, and I make it and use it as follows. Respectfully, Your Honor, what happened after— I don't think, Judge Rich said anything different than I'm saying here. What happened was they started to separate. It was he pointed to the identify part, not how to make and use it part, and then it kept going. And then when it got delinked and there was no standard, they came up with possession. And then when we needed a standard for possession, it became sequence, chemical name. What we're saying is the identification part is to tell somebody what you're making and then tell them how to make and use that. So in response to Judge Post's question, it polices priority when you have amended claims because the person maybe didn't identify it. If you have a whole bunch of chemicals or a whole bunch of computer parts, and then they put it together ten years later and invent the iPod, the rejection is under 112-1 that they didn't identify, they didn't describe that invention originally to get to earlier date. How does the identification— How does the identification of possession— Mr. Whalen, isn't that an issue of possession at that point? Possession does not exist in the statute, and I don't think it's supported in the case law, the Supreme Court case law. What happened was the statute says identify and teach people how to make and use it. What did Bell do? He identified undulating current and told people how to do it. He didn't even do it. And what has happened is it's gone from put the public in possession, making up this test for the separated description, to did the inventor have possession, and then did he make it? That's incorrect. But what's the difference? The difference is in the analysis of the written description cases, they don't look at the Bell case, the Telelink case, and the things like that. So, for example, in our case, you'd say, what did they do? What did they teach? They taught to deploy molecules, and then people went out and did it the next year, and they used the exact same molecules. And that's exactly what the analysis was about, and in this court's analysis of written description, they don't do that. So when they start using the identification part, the possession part, which I think is the wrong word, but identification for clarification here, and then they start saying, well, did you make it? They start getting into the enablement side of it, but they don't use those cases. They don't look at what somebody of ordinary skill was taught, and they don't look at later evidence use and perfection. So in Bell, Bell would fail under the possession test. He had undulating current. He told people what to do, but he didn't get it to work, and the court would say, well, sorry, you don't have possession. And what the Supreme Court said in Bell was, what was his contribution? It was undulating current. Did he teach people how to do it? Yes, and they went out and did it shortly thereafter. And you have to think, in these technologies, Bell wasn't an undulating current guy. He figured out how to make it, but then other people are then going to go do it and build on that. So what we're saying is... But Mr. Lipsy's not saying there has to be a reduction to practice as part of written description. I'm still not understanding what the difference is. So the difference is, Your Honor, is it a written description of the invention measured by possession? It doesn't have to be clear and concise. It doesn't have to enable the current state of the law. And then we have enablement over here, which is a different doctrine, different set of juror instructions, different standard of review, different set of evidence. Or, are they all together? Excuse me. Let me see if I can get at it from a different angle and just ask you directly, what's the difference between showing possession and identifying the invention? So an original claim would identify it. You tell them what it is. Perpetual motion machine. You've identified it. Now you may not want anybody to have it. They can use it and you may fail. Possession in this court has gotten into not whether or not you've identified it, not whether or not that's exactly what you want for an amended debate. Let me answer the question one more way. The identification point, Schreiber-Schrock, Gilbey-Wells, comes into play with amended claims and continuations. And the question is, did you identify what you now tell them you want earlier in the conversation? The possession case has creeped into the enablement area for original claims and things like that. Yes, Your Honor. I agree. Possession was not a great word. Possession crept into the law not as a requirement but as a reason for having a written description aside from the fact that the statute required it. But let me ask you, we've gotten the benefit of a lot of amicus curiae briefs, just about all the major practitioner organizations plus major companies across the spectrum of technology from biotechnology to electronics. Every one of them, just about every one of them has come down four square. There is a separate written description requirement. What do they know that you don't? Your Honor, what they're trying to say is that people like invalidating patents with whatever doctrine they have. They're on both sides of issues. You, you, the, what I believe the parties have done, what I believe the amicus did and I believe Lilly did is they set up a straw man. The, the debate in this court by Judge Lynn and his concurrence in this case and between some of the judges has been not is there a written description of the invention? We are not suggesting to read that out and that is exactly what most of the amicus have suggested. But you said, you said number one in answer to our question, there is no separate written description. From enabling, from the remaining words of the statute, from the debate where the court has been and we wrote the en banc petition which suggested the debate between the court was what's the right standard? Judge Lynn Judge Lynn used the word, it isn't a question of whether there's a written description. He said, what's the sufficiency? That's the question. So if you want to re-ask the question to say, does there have to be a written description of the invention? I'd answer, yes, that wasn't the question you posed. You said separate from enabling and what that implies, given the debate from this court, given our en banc petition, is what's the standard? And what we believe, I believe we are correct on the statutory construction but I know I'm only going to be able to convince you if we don't think we're going to do harm to the system. Despite whether we're right or wrong, you hear this noise from all these people and I can understand why the court is looking at this but what we've said, if you look at the Supreme Court cases, they fall into one or two categories. They're either policing priority for amended claims or reissued claims. They didn't have continuations back then. Gill, Schreiber, Schrock, Permitouin. Or they're deciding, which is what this interpretation will do because you have to have identified it, or they are seeing whether a broader claim has sufficiently been described to meet the contribution of that inventor. Like Morse, like Bell, like Tocqueville. But where we are now in cases that perhaps didn't reach the Supreme Court who were discussing fundamental principles, is that we can all imagine, envision situations where it's possible to enable something without describing. Where the enablement may be in the prior art and you don't have to do very much other than to generally describe how you pluck a gene out of a chromosome that's now very well known without describing the subject matter in detail so that it can be understood and reproduced separate from the rest of the gene. You would not get a patent on that then because if what this court has done by separating the two doctrines is it's weakened enablement. Enablement has become could somebody make it? I respectfully disagree. It's as Judge Markey said in Barker, would somebody make and have been taught how to make the identified invention. So under your hypothetical judgment they identified invention of X and then five years later they claim Y. No. And they didn't identify it. That went farther than I think anyone has ever tried to go in a case or then has been appropriate to go. And I'm trying to really understand the consequences of saying that you don't have to worry about describing it as long as you enable it. No, you do have to be able to      do have to have an opportunity to show it to the public. But in that case, you're agreeing with your opposition. No, I don't think the Court uses the word identification. So Mr. Lipsy, I'd say the question is not the words, it's how do you mean it? And so if I claim X... That's a fact question, isn't it? Whether the fact finder, the examiner, or the district judge thinks that the genus has been invented by description of a variety of species. So how did... But Your Honor, if you follow the Supreme Court, what they said was, did the contribution match the claim? So in Bell... But that didn't deal with... Your respect, Your Honor, in... Bell got a claim on electricity to transmit voice using undulating current. All telephones at the same   transmit voice. So the Supreme Court doesn't limit it to the embodiments that it makes. I understand your concern. So as the opposite side of the case, in the incandescent light case, where he claimed one type of paper, carbonized paper, and he  carbonized paper and claimed all fibrous materials. Guess what? All fibrous materials mostly didn't work. And they rejected that claim. So in that case, then, the claim didn't describe the invention, correct? The claim did not identify the invention. That's correct? So as somebody could make and use that invention. So when you say original claims identify the invention, that's true if they do what you say 112.1 requires, but not otherwise. There are claims, original claims that don't identify, and therefore you need something else to identify. So the incandescent light case, assume it's an original claim. He claimed a much broader thing than his set of species, and he only described one way to do it and all the other ways didn't work. So are we dealing with a utility issue here then? No. We're dealing with the claims have to be supported by the specification, and how they have to be, the invention you want has to be identified as has been discussed, and has to be, somebody could go and make it. So in Bell's case, the underlying current, he told him what to do. Everybody had been using pulse current. What's the difference between identifying and describing? Because the court's current test is possession, and the court's current test is possession, and the court's current test is possession. And it almost became an enablement type analysis. And so the court has separated the two by putting them back together. They would use cases like Bell and Morse and Telekman to say, wait a second, he told him what he wanted, he then told him how to do it, and he gave one workable way to do it, in our case decoy molecules, in Bell's case, the Magneto way to do it. Usually the first way to do it is not a good way, because when somebody is inventing something like Bell or the staged egg incubator case, they have figured out a new way to do it, and they make their way to do it. And now shortly thereafter, the microphone was replaced. And what everybody argues is you're limited to the way you told them how to do it, you're limited to your embodiment. What the Supreme Court said was, of course you're not. You just have to prove that it works, prove a principle that it works, and then if you really have changed the way to do something, then you will be entitled to other method ways of doing it. Mr. Whalen, the Chief Judge asked Mr. Whalen            asked Mr. Whalen to speak to the Supreme Court today. Mr. Whalen was asked to speak to the .  asked        The Supreme Court the Supreme court today. A few minutes ago,   was asked to speak